**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven C Vondran, | No. CV-22-00790-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Jeffrey J Antonelli, et al., | |
| Defendants. | |

Pending before the Court are three motions. First is a Motion to Dismiss for Lack of Personal Jurisdiction ("First Motion to Dismiss" or "First Motion") filed by Defendants Tristan Robinson, an individual ("Robinson"), and Weaver Robinson Law Firm, PLLC (the "Robinson Firm") (collectively the "Robinson Defendants") (Doc. 13). Plaintiff Steven Vondran ("Plaintiff") filed a Response (Doc. 14) with a Supplemental Declaration (Doc. 15). The Robinson Defendants filed a Reply (Doc. 17).

Second, is a Motion to Dismiss for Lack of Personal Jurisdiction ("Second Motion to Dismiss" "Second Motion") filed by Defendants Jeffrey J. Antonelli, an individual ("Antonelli"), and The Law Offices of Jeffrey J. Antonelli, Ltd. (the "Antonelli Firm") (collectively the "Antonelli Defendants") (Doc. 20). Plaintiff filed a Response (Doc. 21), and the Antonelli Defendants filed a Reply (Doc. 22). Thereafter, Plaintiff filed a sur-reply titled "Memorandum of Points and Authorities," which is comprised of four additional memorandums and declarations in opposition of the Second Motion. (Docs. 23; 24; 25; 26).

Third, is a Motion to Strike filed by the Antonelli Defendants (Doc. 27), which the

1   Robinson Defendants joined (Doc. 28). Plaintiff filed a Response (Doc. 29). For the
2   following reasons, the Court grants all three motions.

3   **I.    Background**

4       **A.    The History of the Case**

5           This case is based on a previous trademark dispute between the Antonelli Firm and
6   a non-party professional corporation, The Law Offices of Stephen C. Vondran, P.C. (the
7   "Vondran Firm"), which is a law firm owned by Plaintiff.  On July 26, 2021, The Antonelli
8   Firm, while represented by the Robinson Firm, filed a complaint against the Vondran Firm
9   with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation
10  Center pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") (the
11  "UDRP Action").[1] (Doc. 1-3 at 13). Therein, the Antonelli Firm claimed registered
12  ownership over the domain name <torrentdefenders.com> and alleged that the Vondran
13  Firm was using the domain name in bad faith. (*See generally id*. at 13–16). WIPO
14  ultimately issued an administrative panel decision ("WIPO Decision") that denied the
15  Antonelli Firm's UDRP Action because it "was brought in bad faith and constitutes an
16  abuse of the administrative proceeding." (*Id*. at 20).

17          On April 5, 2022, Plaintiff filed a Complaint in Maricopa County Superior Court of
18  Arizona ("Complaint") bringing a cause of action for wrongful institution of civil
19  proceedings against the Antonelli and Robinson Defendants (collectively "Defendants").
20  *Vondran v. Antonelli*, No. CV2022-004292 (Ariz. Super. 2022); (Doc. 1-3 at 3–11).
21  Plaintiff seeks general and specific damages for defending against the UDRP Action, along
22  with punitive or exemplary damages. (Doc. 1-3 at 10). Defendants removed the suit to this
23  Court on the basis of diversity jurisdiction. (Doc. 1). Plaintiff moved to remand, which the
24  Court denied. (Doc. 19). During June through August 2022, the Defendants filed the three

25  _____

26  [1] *See* WIPO, *Online Complaint Filing Form Complaints under the Uniform Domain
    Name Dispute Resolution Policy (UDRP)*,
27  https://amc.wipo.int/udrp/complaint.jsp#:~:text=Filing-
    ,Online%20Complaint%20Filing%20Form%20Complaints%20under%20the%20Uniform
28  m%20Domain%20Name,WIPO%20Arbitration%20and%20Mediation%20Center (last
    visited Dec. 9, 2022).

pending motions at issue in this Order (Docs. 13; 20; 27) as well as a Joint Discovery Dispute Statement (Doc. 35). In their Statement, the Defendants sought a stay in proceedings until the Court has ruled on First and Second Motions to Dismiss (Doc. 13; 20), which the Court granted (Doc. 37).

### B.      The Defendants

The Antonelli Firm is a law firm based in Chicago, Illinois, that provides legal defense services for parties accused of copyright infringement. (Doc. 1-3 at 3, 14). Antonelli, a Chicago resident, is the owner of the Antonelli Firm. (*Id*. at 3).

The Robinson Firm is a law firm and professional liability company that was formed in the State of Texas (Doc. 13-1 at 2). Its principal place of business is in Arlington, Texas, and all of its members reside in Texas. (*Id*.) Robinson is a Texas resident and attorney licensed to practice law in Texas and maintains the Robinson Firm. (*Id*.)

## II.    Legal Standard

A plaintiff bears the burden of establishing personal jurisdiction over all defendants. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co*., 907 F.2d 911, 912 (9th Cir. 1990)).  A defendant may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2). When a defendant does so, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Cummings v. W. Trial Lawyers Assoc*., 133 F. Supp. 2d. 1144, 1151 (D. Ariz. 2001).

"In resolving a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion."  *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014)).  Where the motion is based on written materials, "the plaintiff need only make a *prima facie* showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  In determining whether the plaintiff has met this burden, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a *prima facie* case for

personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). Therefore, the analysis of personal jurisdiction under Arizona law and federal law are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). Under the Due Process Clause, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal citations omitted).

The personal jurisdiction requirement is a waivable right and "there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985). For example, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316 (1964). Additionally, a court may assert general or specific jurisdiction over the nonresident defendant. *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's specific contact with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291. Where neither general nor specific jurisdiction exists, the court must dismiss the defendant under Rule 12(b)(2).

1   **II.     Discussion**

2        The Court will first determine the First Motion to Dismiss filed by the Robinson

3   Defendants. Next, the Court will turn to the Second Motion to Dismiss filed by the

4   Antonelli Defendants. The Court will examine the Motion to Strike in its analysis of the

5   Second Motion since it pertains to Plaintiff's related sur-reply. Last, the Court will consider

6   Plaintiff's request to amend his Complaint.

7        **A.     First Motion to Dismiss**

8        The Robinson Defendants move to dismiss all claims against them due to lack of

9   personal jurisdiction over Robinson and the Robinson Firm. In considering the First Motion

10  to Dismiss, the Court will address Plaintiff's arguments regarding (1) diversity among the

11  parties; (2) the Robinson Defendant's failure to meet and confer; and (3) personal

12  jurisdiction over the Robinson Defendants.

13       **1.     Diversity Among the Parties**

14       As a preliminary matter, Plaintiff argues in his Response that complete diversity

15  does not exist among the Defendants.[2] (Doc. 14 at 2). In its prior Order denying Plaintiff's

16  Motion to Remand (Doc. 19), this Court already found "both the diversity and amount in

17  controversy requirements are met" and "the Court may exercise subject matter jurisdiction

18  over this case" under 28 U.S.C. § 1332. (*Id*. at 3). The Court will adhere to the findings of

19  its prior Order. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (under

20  the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue

21  that has already been decided by the same court, or a higher court in the identical case").

22       **2.     Failure to Meet and Confer**

23       Plaintiff further contends the First Motion is improper because the Robinson

24  Defendants failed to meet and confer before its filing on June 17, 2022, thereby violating

25  _____

[2] Plaintiff sued the Robinson and Antonelli Defendants in Maricopa County Superior
26  Court of Arizona. (Doc. 1-3 at 9); *Vondran v. Antonelli*, No. CV2022-004292 (Ariz.
    Super. 2022). The Antonelli Defendants removed the action to this Court (Doc. 1), and
27  the Robinson Defendants consented to the removal by filing a Notice of Consent to and
    Joinder in Notice of Removal (Doc. 12). Plaintiff seems to argue the Robinson
    Defendants improperly joined the Antonelli Defendants' Notice of Removal because
28  there is no complete diversity.  (Doc. 14 at 2).

the Courts prior Order (Doc. 4). This district has held that "striking the motion is unnecessary when the movant promptly takes active steps to cure any harm caused by the failure to meet and confer." *Wine Educ. Council v. Ariz. Rangers*, 2020 U.S. Dist. LEXIS 235192, at *29 (D. Ariz. Dec. 15, 2020) (citing *Pike v. Arizona*, 2018 U.S. Dist. LEXIS 136908, at *1 n.1 (D. Ariz. Aug. 14, 2018) (considering the motion on the merits after noting "[i]n their reply, Defendants assert that they have since conferred with Plaintiff's counsel and offered to stipulate to an amended complaint that cured the issues . . . [and] Plaintiff declined to amend the Complaint at that time").

Here, the Robinson Defendants admitted their oversight of failing to meet and confer, and attempted to correct the deficiency at the June 21, 2022, Rule 16 conference and through subsequent email correspondence with Plaintiff.[3] (Doc. 17-1 at ¶ 5–6). During this email correspondence, Plaintiff stated he did not believe an amendment was necessary to clarify personal jurisdiction over the Robinson Defendants. (Doc. 17-2 at 19–20). Last, the parties' correspondence makes clear that requiring them to meet and confer again would not change their stances on personal jurisdiction. (*See id.* at 13–20). *See Cartessa Aesthetics LLC v. Aesthetics Biomedical Inc.*, 2021 U.S. Dist. LEXIS 37910, at *11 (D. Ariz. Mar. 1, 2021) (allowing a portion of a motion to dismiss to proceed because, "under these circumstances, further meeting-and-conferring about this particular counterclaim would have been pointless").

In light of these circumstances and the active steps taken by the Robinson Defendants to cure any harm caused by their failure to meet and confer, the Court finds that striking the First Motion is unnecessary.

///

---

[3] Five days after filing the First Motion, the Robinson Defendants asked Plaintiff during the June 21, 2022, Rule 16 conference "whether he believed the allegations in the Complaint were sufficient to withstand the challenge to the Court's personal jurisdiction . . . and [], if not, whether he believed he could cure any purported defect by amendment of the allegations." (Doc. 17-1 at 2). Plaintiff did not believe an amendment was required. (Doc. 17-2 at 20). Thereafter, the Robinson Defendants engaged with email correspondence with email to further discuss the issue of personal jurisdiction and copies of pertinent GoDaddy corporate filing pursuant to the Court's prior Order (Doc. 4). (*See* Doc. 17-2 at 13–20).

### 3.    Personal Jurisdiction Over the Robinson Defendants

The Court will first consider whether the Robinson Defendants have consented to this Court's jurisdiction via agreement. The Court will then examine whether Plaintiff has made a *prima facie* showing that this Court has either general or specific jurisdiction over each of the Robinson Defendants.

### i.    Personal Jurisdiction by Agreement

First, Plaintiff fails to show the Robinson Defendants consented to jurisdiction in Arizona. Plaintiff argues the Robinson Defendants contractually agreed to this Court's jurisdiction pursuant to the "Mutual Jurisdiction" clause contained in the UDRP Action Complaint, which states:

> [T]he Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name(s) that is/are the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

(Doc. 14-5 at 14). Plaintiff asserts that the domain name <torrentdefenders.com> is maintained by the domain registrar GoDaddy. (Doc. 14 at 6). Plaintiff further reasons the Robinson Defendants submitted to the jurisdiction of Arizona when filing the UDRP Action because GoDaddy is headquartered in Tempe, Arizona. (*Id*.) But neither of the Robinson Defendants were the Complainant in the UDRP Action; they merely represented the Complainant as counsel. Therefore, this Mutual Jurisdiction clause is inapplicable to the Robinson Defendants and is an insufficient source of personal jurisdiction.

### ii.    General Jurisdiction

Second, Plaintiff fails to establish general jurisdiction over either Robinson Defendant. As to Robinson, Plaintiff agrees he is a Texas resident and attorney licensed to practice law in Texas. (Doc. 1-6 at 5). Robinson claims he does not work within Arizona, has never initiated any action in Arizona against Plaintiff, and has never consented to be subject to the jurisdiction of Arizona. (Doc. 13-1 at 2). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Therefore, the Court finds that it does not have general jurisdiction over Robinson because Plaintiff has not set forth any factual allegations that Arizona is Robinson's domicile.

Plaintiff also fails to establish general jurisdiction over the Robinson Firm. It is undisputed, and Plaintiff agrees, that the Robinson Firm is incorporated in Texas and holds its principal place of business in Arlington. The Robinson Firm further claims all of its members reside in Texas. (Doc. 13-1 at 2). For a corporation, the "paradig[m] bases for general jurisdiction" are its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. Therefore, Plaintiff has not met these requirements to establish general jurisdiction over the Robinson firm in Arizona.

Moreover, the Robinson Firm explained none of its lawyers are licensed to practice in Arizona and thus do not work within Arizona or maintain any offices within Arizona. (Doc. 13-1 at 2). Plaintiff does not set forth any factual allegations to the contrary or otherwise show the Robinson Firm has any affiliation or business with Arizona. Thus, Plaintiff has failed to make a *prima facie* showing that "continuous and systematic general business contacts" establish the Robinson firm at home in the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414. Accordingly, the Court finds that it does not have general jurisdiction over the Robinson Firm.

### iii.    Specific Jurisdiction

Third, Plaintiff improperly focuses on the Antonelli Defendants' contacts with Arizona to suggest those contacts are imputed onto the Robinson Defendants for specific jurisdiction purposes. (Doc. 14 at 3) (describing the Antonelli Defendants to "include the Robinson Defendants as part of their nationwide practice/team/business venture, advertise in Arizona as well"). Courts in the Ninth Circuit apply a three-part "minimum contacts" test to determine whether a defendant has sufficient contacts to subject to specific personal jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *see* discussion of test at *infra* Section II.B(3)(ii). This test looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Burger King*, 471 U.S. at 475.  The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 417. The Court must "reject[] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284.

Plaintiff fails to establish that Robinson has sufficient minimum contacts with Arizona. Plaintiff argues the Antonelli Defendant's alleged contacts with Arizona are imputed onto Robinson due to his "precise role as alleged partner joint venturer and *Trusted Lawyer for the Antonelli Firm*." (Doc. 14 at 2) (Doc. 14 at 6). However, Plaintiff has not alleged any evidence that show Robinson's personal or independent actions as an alleged partner establish minimum contacts with Arizona. Plaintiff only provides Robinson's attorney profile on the Antonelli Firm website as proof of Robinson's status as a partner at the Antonelli Firm. (Doc. 14-2 at 7). This is insufficient because although Antonelli's action's may be imputed to the Antonelli Firm for the purpose of establishing minimum contacts, it "ordinarily may not be imputed to the other partners," such as Robinson.  *Sher*, 911 F.2d at 1366 (finding the district court had jurisdiction over only those individual partners in a law firm "who personally established the requisite minimum contacts" with the forum state). Therefore, the Court finds that it does not have specific jurisdiction over Robinson on this basis.

Plaintiff makes a similar attempt to impute the Antonelli Firm's alleged contacts with Arizona onto the Robinson Firm for purposes of specific jurisdiction. Without providing any supporting evidence, Plaintiff states "these firms are one in the same, partners, members, representatives of the other, etc. If one has minimum contacts, they both do as they are one in the same, etc." (Doc. 17-2 at 19). Notably, Plaintiff seems to contradict his prior statement characterizing the Robinson Firm as "*a separate law firm from Antonelli's law firm* in Chicago" (Doc. 7 at ln. 15–16). Regardless of this discrepancy, as discussed, Plaintiff cannot establish personal jurisdiction over the Robinson Firm on the

sole basis of the Antonelli Firm's actions. *Helicopteros Nacionales*, 466 U.S. at 417. Therefore, the Court finds that it does not have specific jurisdiction over the Robinson Firm.

In sum, Plaintiff fails to establish personal jurisdiction over the Robinson Defendants. Plaintiff has not alleged any facts to establish Arizona as Robinson's domicile, or render the Robinson Firm at home in Arizona. *See Helicopteros Nacionales*, 466 U.S. at 414. Additionally, when looking only to the intentional acts of each individual Robinson Defendant for the purposes of specific jurisdiction, Plaintiff has not alleged any facts to establish that Robinson or the Robinson Firm maintains minimum contacts with Arizona. *Id.* at 417. Therefore, the Court finds that it does not have personal jurisdiction over either of the Robinson Defendants and will grant the First Motion to Dismiss.

### B.     Second Motion to Dismiss

The Antonelli Defendants move to dismiss all claims against them due to lack of personal jurisdiction over either Antonelli or the Antonelli Firm. In considering the Second Motion to Dismiss filed by the Antonelli Defendants, the Court will first examine the Motion to Strike in order to cure any procedural defects. Second, the Court will address Plaintiff's argument the Antonelli Defendant's failure to meet and confer. Third, the court will determine whether personal jurisdiction exists over the Antonelli Defendants.

#### 1.     Motion to Strike

The Antonelli Defendants, joined by the Robinson Defendants, move to strike Plaintiff's sur-reply (Docs. 23; 24; 25; 26) in opposition of the Second Motion as prohibited filings under Rule 7.2(m) of the Local Rules of Civil Procedure. Plaintiff justifies his piecemealed filings because he "did not want the court to rule on the motion before [he] had a chance to fully respond to all the points raised in Defendants motion to dismiss." (Doc. 24 at ¶ 4). Plaintiff further argues, without citation to authority, that striking his four additional filings would not be in the interests of justice. (Doc. 29 at 1).

Rule 7.2(c) governs the procedure for filing responsive memorandums and states:

///

1
2
3
4

> The opposing party shall, unless otherwise ordered by the Court and except as otherwise provided by Rule 56 of the Federal Rules of Civil Procedure, and Rules 12.1 and 56.1, Local Rules of Civil Procedure, have fourteen (14) days after service in a civil or criminal case within which to serve and file a responsive memorandum.

5
6
7
8
9
10
11
12
13
14

LRCiv 7.2(c). Additionally, Rule 7.2(c) permits "a nonmoving party to file a single response memorandum addressing an opposing party's motion." *Madison v. First Magnus Fin. Corp*., 2009 WL 751603, at *7 (D. Ariz. Mar. 19, 2009). Neither the Federal Rules of Civil Procedure nor the District's Local Rules entitle a party to a sur-reply as a matter of right. *See* LRCiv 7.2. Indeed, "sur-replies are highly disfavored and permitted only in extraordinary circumstances." *Finley v. Maricopa Cty. Sheriff's Office*, 2016 WL 777700, *1 n.1 (D. Ariz. Feb. 29, 2016). The Court may use its discretion in allowing a sur-reply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fitzhugh v. Miller*, 2020 WL 1640495, *9 (D. Ariz. Apr. 2, 2020) (citing *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. Nov. 8, 2005)).

15
16
17

The Court will strike Plaintiff's sur-reply because he did not seek leave to file the sur-reply, nor did he state why the information in the sur-reply could not have been included in Response to the Second Motion, which he filed the same day.

18

### 2.    Failure to Meet and Confer

19
20
21
22
23
24
25
26
27
28

Like the First Motion, Plaintiff argues the Second Motion is improper because of the Antonelli Defendants' failure to meet and confer before its filing on July 13, 2022. The Antonelli Defendants contend they did meet and confer with Plaintiff at the June 21, 2022, Rule 26(f) conference, where they explained their Motion would be based on the same reasons as the Robinson Defendant's Motion. (Doc. 22 at 1–2). ("[T]he Antonelli Defendants would also be moving to dismiss . . . [due to] their lack of sufficient contacts with Arizona and the inapplicability of consent provision contained in the UDRP [Action] on which Plaintiff's complaint is based."). As proof, the Antonelli Defendants refer to the email correspondence between the Robinson Defendants and Plaintiff referenced above, which the Antonelli Defendants are copied on. *See supra* Section II.A.(2) (citing Doc. 17-

2 at 19–20).

Because the Antonelli Defendants point to communications they did not take an active role in, it is unclear whether the Antonelli Defendants in fact met and conferred in good faith with Plaintiff regarding the Second Motion. However, because Plaintiff seeks to establish jurisdiction over all Defendants based on the same alleged minimum contacts by the Antonelli Defendants, *see supra* Section II.A(3)(ii), the Court recognizes that the Second Motion essentially raises the same jurisdictional arguments as the First Motion. Indeed, as part of his correspondence with the Robinson Defendants, Plaintiff unequivocally stated he has "pled the minimum contacts for Antonelli in paragraph 3-4 [of the Complaint]" and "do[es] not believe this requires any amendment to make this more clear." (Doc. 17-2 at 19–20). Thus, the Court finds that requiring the parties to meet and confer again would not change the parties' stances on personal jurisdiction. *See Cartessa Aesthetics*, 2021 U.S. Dist. LEXIS 37910, at *11.

In light of these circumstances, the Court will overlook the Antonelli Defendants' failure to meet and confer and finds that striking the Second Motion is unnecessary.

### 3.      Personal Jurisdiction Over the Antonelli Defendants

The Court will first consider whether the Antonelli Defendants consented to this Court's jurisdiction via agreement. The Court must then analyze whether Plaintiff has made a *prima facie* showing that this Court has either general or specific jurisdiction over each of the Antonelli Defendants.

### i.      Personal Jurisdiction by Agreement

First, Plaintiff fails to show the Antonelli Defendants consented to jurisdiction in Arizona. Plaintiff makes the same argument above that the Antonelli defendants agreed to jurisdiction in Arizona pursuant to the Mutual Jurisdiction clause contained in the UDRP Action Complaint (*see supra* Section II.A(3)(ii)), which is reproduced below:

> [T]he Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name(s) that is/are the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the

concerned registrar.

(Doc. 14-5 at 14). Plaintiff again reasons the Antonelli Defendants submitted to the jurisdiction of Arizona when filing the UDRP Action because GoDaddy is headquartered in Tempe, Arizona. (Doc. 14 at 6).

Here, the Mutual Jurisdiction clause applies to the Antonelli Firm as the Complainant in the UDRP Action. However, the clause's application is explicitly limited to "challenges . . . made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name(s) that is/are the subject of [the] Complaint." Plaintiff admits the WIPO Decision "does not per se involve the cancellation or transfer of the domain" name <torrentdefenders.com>. (Doc. 15 at ¶ 21). Furthermore, Plaintiff makes no challenge to the WIPO Decision. Instead, Plaintiff seeks enforcement of its finding that the UDRP Action "was brought in bad faith and constitutes an abuse of the administrative proceeding." (Doc. 1-3 at 20). Therefore, this Mutual Jurisdiction clause is inapplicable to the Antonelli Defendants in this context and thus is an insufficient source of personal jurisdiction.

### ii.     General Jurisdiction

Second, Plaintiff fails to establish general jurisdiction over each of the Antonelli Defendants. As to Antonelli, Plaintiff agrees he a Chicago resident. (Doc. 1-3 at 3). Antonelli states he is domiciled in Illinois and does not own, lease, or maintain any residence, office, or facility in Arizona. (Doc. 20-1 at ¶ 2). Therefore, the Court finds that it does not have general jurisdiction over Antonelli because Plaintiff does not advance any factual allegations that Arizona is Antonelli's domicile. *Goodyear Dunlop Tires*, 564 U.S. at 924.

Plaintiff also fails to establish general jurisdiction over the Antonelli Firm. It is undisputed that the Antonelli Firm is incorporated in Illinois with its principal place of business in Chicago. (Docs. 1-3 at 3, 14; 20-1 at ¶ 3). Therefore, Plaintiff does not meet the requirements for general jurisdiction under *Daimler*. 571 U.S. at 137 (explaining the basis for general jurisdiction over a corporation are its "place of incorporation and principal

place of business"). Moreover, the Antonelli Defendants state the firm does not own any bank accounts, property, or lease or otherwise maintain an office, any facilities, or other place of business in Arizona. (Doc. 20-1 at ¶ 4). Plaintiff does not allege any facts to the contrary, and thus fails to make a *prima facie* showing that "continuous and systematic general business contacts" establish the Antonelli Firm at home in the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414. Accordingly, the Court finds that it does not have general jurisdiction over the Antonelli Firm.

### ii. Specific Jurisdiction

Plaintiff argues this Court has specific jurisdiction over the Antonelli Defendants because of their contacts with Arizona. To determine whether specific personal jurisdiction has been established, courts in the Ninth Circuit apply a three-prong "minimum contacts" test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill*, 873 F.3d at 1142. A plaintiff must satisfy both of the first two prongs to establish personal jurisdiction. *Id*. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Burger King*, 471 U.S. at 476–78. If one of the first two prongs is not met, the and the inquiry ends there and the Court does not have personal jurisdiction over the defendant. *Id.*

### a. The First Prong of the Minimum Contacts Test

To determine the first prong of the minimum contacts test, the Ninth Circuit has established separate inquiries depending on whether the nature of the claims at issue arise

from a contract or alleged tortious conduct. *See Morrill*, 873 F.3d at 1142. Plaintiff's Complaint alleges an intentional tort claim against the Antonelli Defendants for wrongful institution of civil proceedings. Thus, the court will apply the "purposeful direction" inquiry to determine whether the first prong of the minimum contacts test is met. *Id.* (applying the purposeful direction test in evaluating plaintiff's wrongful institution of civil proceedings); *see also Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). The purposeful direction inquiry "requires that the defendant . . . (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d at 1111. Actions may be directed at the forum state even if they occurred elsewhere. *Id.* However, "random, fortuitous, or attenuated contacts" are insufficient to create the requisite connection with the forum. *Burger King*, 471 U.S. at 475.

Plaintiff argues the Antonelli Defendants purposely direct their legal services toward Arizona. As to Antonelli, Plaintiff claims he holds himself out to appear licensed to practice law in Arizona through his profile on the Electronic Freedom Foundation Website, and thereby seeks business from clients from Arizona. (Docs. 14 at 3; 14-3 at 2). As to the Antonelli Firm, Plaintiff represents the firm purposefully avails itself from the benefits and protections of Arizona because it seeks and targets clients in Arizona, advertises in Arizona through its website, and has filed lawsuits in Arizona. (Doc. 14 at 6). The Court notes this conduct could establish that the Antonelli Defendants committed intentional acts expressly aimed at the forum State of Arizona. However, Plaintiff does not allege any harm was caused in Arizona by this conduct under the third requirement of the purposeful direction inquiry.

Plaintiff further argues the alleged harm resulting from the Antonelli Defendant's UDRP Action against Plaintiff occurred in Arizona, presumably due to the fact Plaintiff is a resident of Arizona. (*Id.* at 7) ("Since the damage was inflicted in Arizona, known to be affecting Arizona, a nationwide firm doing business in Arizona . . . cannot now claim they have no contacts with Arizona."). At the outset, Antonelli and Plaintiff were not parties to

the UDRP Action. Therefore, Plaintiff cannot claim initiation of the UDRP Action was an intentional act by Antonelli to establish purposeful direction. As to the Antonelli Firm, the firm claims it filed the UDRP Action online with the WIPO Arbitration and Mediation Center, which is based in Switzerland, through a Texas lawyer. (Doc. 20 at 7). The UDRP Action was commenced against the Vondran Firm, which is a California corporation. (*Id.*) None of these intentional acts where expressly aimed at Arizona. Therefore, the Court finds the Antonelli Firm did not intentionally target Arizona by filing the online UDRP Action.

Moreover, the "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 284 (2014).  Rather, courts consider two factors to assess whether a defendant has purposefully directed his actions at the state.  "First, the relationship must arise out of contacts that the defendant himself creates with the forum State." *Burger King*, 471 U.S. at 475.  Second, the "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *Id.* "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284.

The allegation that the UDRP Action caused harm to Plaintiff in Arizona "without more, does not show that Defendants expressly targeted the forum state." *Morrill*, 873 F.3d at. at 1145. Based on the facts alleged by the Plaintiff, any allegedly tortious conduct associated with the UDRP Action involved limited to no communications aimed at Arizona. In sum, Plaintiff has not established the Antonelli Defendants engaged in actions purposely directed at Arizona, thereby failing the first prong of the minimum contacts test.

### b.     The Second Prong of the Minimum Contacts Test

Because Plaintiff fails to meet prong one of the minimum contacts test, the inquiry ends here and the Court need not consider prong two. *Morrill*, 873 F.3d at 1142 ("The plaintiff bears the burden of satisfying the first two prongs of the test.").

///

### C.     Plaintiff's Request to Amend

In his Response in opposition of the Second Motion to Dismiss, Plaintiff states an amendment to his Complaint would cure any deficiencies regarding specific jurisdiction over the Defendants "due to their combined tortious activity (alleged conspiracy) resulting in a finding of Reverse Domain Name Hijacking in the WIPO domain dispute proceeding." (Doc. 21 at 3). He further explains "[a]n additional cause of action for negligence (ex. negligent hiring, management, supervision, etc.) will be added. (*Id*.)

Given that this Court does not have general jurisdiction over the Robinson Defendants and Plaintiff cannot establish they have any contacts with Arizona, an amendment would not be able to clarify personal jurisdiction over the Robinson Defendants. Thus, the court will dismiss the Robinson Defendants under Rule 12(b)(2).

Although the Court does not have general jurisdiction over the Antonelli Defendants, the Court recognizes that Plaintiff establishes they have some contacts with Arizona. But those contacts are insufficient as minimum contacts for specific jurisdiction purposes regarding a claim for wrongful institution of civil proceedings. As alleged by Plaintiff, the Antonelli Defendant's Arizona contacts have to do with their advertisement of legal services or the UDRP Action. Without more, the Court cannot determine at this juncture whether the Plaintiff's purported amendment adding a cause of action for negligence would address these deficiencies regarding specific personal jurisdiction over the Antonelli Defendants.  Plaintiff may nonetheless request leave to amend his Complaint by filing a motion under Rule 15 of the Federal Rules of Civil Procedure upon the Court's lifting its stay of proceedings in this matter. Fed. R. Civ. P. 15.

### IV.    Conclusion

The Court grants the First Motion to Dismiss, thereby dismissing all claims against the Robinson Defendants from this matter. This Court does not have general jurisdiction over the Robinson Defendants and Plaintiff failed to show the Robinson Defendants have any contacts with Arizona for specific jurisdiction purposes.  The Court also grants the Defendants' Motion to Strike Plaintiff's sur-reply in opposition of the Second Motion to

Dismiss as prohibited filings under Local Rule 7.2(m). Last, the Court grants the Second Motion to Dismiss. This Court does not have general jurisdiction over the Antonelli Defendants and Plaintiff failed to show the Antonelli Defendants' contacts with Arizona are sufficient for specific jurisdiction purposes.

Having addressed the three pending Motions at issue in this Order, the court lifts the stay of proceedings in this action. Plaintiff may request leave to amend his Complaint by filing a motion under Rule 15 of the Federal Rules of Civil Procedure to clarify whether the Court has specific jurisdiction over the Antonelli Defendants.

Accordingly,

**IT IS ORDERED** the stay of proceedings in this matter is lifted.

**IT IS FURTHER ORDERED** the Motion to Dismiss for Lack of Personal Jurisdiction filed jointly by Defendants Tristan Robinson, an individual, and Weaver Robinson Law Firm, PLLC (Doc. 13) is **GRANTED**. The Clerk of Court is directed to dismiss Defendants Tristan Robinson and Weaver Robinson Law Firm, PLLC, from this action.

**IT IS FURTHER ORDERED** the Motion to Strike filed by the Defendants Jeffrey J. Antonelli, an individual, and The Law Offices of Jeffrey J. Antonelli, Ltd. (Doc. 27) is **GRANTED**. Plaintiff's four additional memorandums and declarations in opposition of the Second Motion to Dismiss (Docs. 23; 24; 25; 26) shall be stricken from the docket.

**IT IS FURTHER ORDERED** the Motion to Dismiss for Lack of Personal Jurisdiction filed jointly by Defendants Jeffrey J. Antonelli, an individual, and The Law Offices of Jeffrey J. Antonelli, Ltd. (Doc. 20) is **GRANTED.**

///

///

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS FINALLY ORDERED** that Plaintiff shall have until January 9, 2023, to seek leave from the Court to file a first amended complaint.  If no motion is filed by that date, the Clerk of Court shall terminate this matter without further order of the Court.

Dated this 23rd day of December, 2022.

Honorable Diane J. Humetewa
United States District Judge